STEWART *v.* CHESAPEAKE & OHIO CANAL Co. and others.*

*(Circuit Court, D. Maryland.  ——, 1881.)*

1. APPLICATION FOR RECEIVER OF A CANAL COMPANY REFUSED.—The holder of a bond secured by first mortgage of the tolls and revenue of a canal filed a bill for the appointment of a receiver, alleging that the default in payment of the bond was caused by wasteful and corrupt mismanagement of the corporation.    The mortgage provided that the corporation should remain in possession unless it was shown affirmatively that the default resulted from other causes than failure of business.    *Held*, that to induce the court to appoint a receiver to manage a work attended with such risk and difficulty, for an indefinite time, the complainant must show, beyond question, that the default had arisen from mismanagement, or that the safety of the property, if left in the possession of the corporation, was threatened by reason of corporate misconduct; and it must also appear that the appointment of a receiver would probably result in effectual relief.

2. INSOLVENT CORPORATION — BONDHOLDERS — RECEIVER—ACCOUNT OF RECEIPTS AND DISBURSEMENTS.—It appearing that the corporation was largely insolvent; that the bonds were in default; that by the express terms of the mortgage the bondholders had no right to have possession of the canal and collect the tolls and revenue, and had no voice in controlling the expenditures, and no convenient method of scrutinizing them; and it appearing that with earnest economy there might be an excess of revenue over working expenses sufficient to pay interest on the bonds: *Held*, that the corporation was to be treated as a trustee holding possession of the canal for the benefit of creditors, and that without appointing a receiver the court would, for the protection of the bondholders, retain the bill in order that at stated intervals the corporation might render accounts of its receipts and disbursements.

3. COSTS—FORM OF DECREE.

In Equity.

*For the opinion of the court on the jurisdictional questions raised in this case see *Stewart* v. *C. & O. Canal Co.* 1 FED. REP. 361.

*Johnson, Poe, Bryan, Stirling,* and *Marshall,* for complainant.

*Wallis, Lanahan, Carter, Ex-Gov. Thomas, Williams,* and *Horwitz,* for defendants.

MORRIS, D. J.   This is an application for the appointment of a receiver to take possession of and operate the Chesapeake & Ohio Canal.

The complainant, an alien, is the holder of $150,000 of the preferred construction bonds issued by the canal company under the Maryland act of 1844, c. 281.   By this act the state of Maryland, which held $5,000,000 of the stock of the corporation,—about five-eighths of the whole capital,—and which had also loaned to the corporation about $5,000,000 on a first mortgage of all its property, including tolls and revenue, agreed to waive and postpone its first lien in favor of the bonds to be issued under the above-mentioned act, and authorized the corporation to issue a first mortgage of its tolls and revenue to execute them.   Accordingly the corporation did execute such a mortgage, dated June 1, 1848, and issued about $1,700,000 of bonds thus secured.   This mortgage conveyed to certain trustees the revenues and tolls of the canal to secure, after paying the repairs of the canal and the salaries of its officers, the payment of interest on the bonds so issued, and a sinking fund for their ultimate redemption.   By the terms of the mortgage, in case of failure of the corporation to fulfil its obligations to the holders of these bonds, and subject to the conditions hereafter mentioned, the trustees were given power and authority to collect the tolls and revenue of the canal, and, after applying sufficient to put and keep the canal in good condition and repair, and to provide the requisite supply of water, and to pay the salaries of the officers and agents of the corporation and its current expenses, they were to apply the remainder in satisfaction of the bonds and interest.   It was further provided that the corporation should retain possession of the canal so long as it should comply with the agreements in the mortgage, and if it should fail to comply with these agreements from any cause, except a deficiency of revenue arising from a failure of business, without fault on its part,—the default to be

made to appear by the trustees,—then the trustees might demand and should receive possession, and should appropriate the tolls and revenue in the manner aforesaid.

The bill alleges, and the proof shows, that the last payment of interest on complainant's bonds, and on all bonds issued under this mortgage, was made in the month of December, 1876, when the coupon which had fallen due July 1, 1864, was paid, and no payment has since been made. This default, however, by the express terms of the mortgage, gives the complainant no ground to ask to have possession of the canal, either through the trustees, or by the appointment of a receiver, unless he has made it appear that the default in the payment of interest has been caused by some misappropriation or mismanagement on the part of the corporation, and not by a failure of business without its fault, or else has shown to the court such corporate misconduct injurious to the bondholders as demonstrates the necessity of taking the property out of the hands of the corporation for the protection of their rights. The complainant alleges, and has endeavored to show by testimony, that he is entitled to relief on both of these grounds.

The first of the causes charged in the bill for the deficiency of revenue is that the present management under President Gorman, who was elected in 1872, has been so entirely political that the canal has been and now is used primarily and mainly in the interest of partisan political objects, without regard to the rights of its creditors, and that the president, and those with him who control the management of the canal, have, during the last three years, under *pretence* of employing persons to perform service for the company, kept their political agents in its pay when not performing any service for the canal, and have employed large numbers of unnecessary and useless employes for the purpose of promoting their own political schemes. Undoubtedly the fact that the state of Maryland is the owner of a majority of the capital stock, and does, through her board of public works, appoint the president and directors, has always connected the manage-

ment of the canal with the political changes in the state government. This has been always a subject of regret to those interested in the financial success of the work, and to the consequent lack of a fixed and stable policy in its management has been attributed the disappointment of the expectations of the projectors. The evils arising from the control of the state over the management of the canal have been the frequent theme of comment in the reports of its officers, and the ground of applications to the legislature for relief. But this is not an evil which the courts can remedy. It existed at the time when complainant purchased his bonds, and has always been an element in the estimate of their value.

If, however, the complainant had produced proof to establish the abuses alleged in his bill to have grown out of this political connection, and had shown, as alleged, that the revenues of the corporation were being squandered in paying persons kept in its service for political reasons, and not really necessary for its business, we should have no doubt of the duty of the court to interpose to prevent so gross an abuse of a trust. For the corporation being insolvent to the extent that for years at a time its revenues have barely met its working expenses, it is manifest that the property is held by the corporation as trustee for its creditors, and the utmost good faith, economy, and prudence are to be exercised in its management. So that, if the allegation of paying useless employes had been proved, such an abuse of this trust would have been made apparent as would have required the intervention of the court, as the only protection left to the bondholders against a faithless trustee of a property which is their only security. But we do not find this allegation established by the proof. The complainant has urged upon the attention of the court the falling off in the net income of the canal, and the increase of expenditure in proportion to receipts since 1875, and charges that these are evidence of extravagance and mismanagement. The fact that the net income of the canal, which, in the years 1871, '72, '73, '74, and '75, had been over $200,000 in each of those years, fell in 1876 to

$67,144, and that in 1877, '78, and '79 the canal earned no net income at all, is a matter which, as trustee, the corporation was bound to explain and account for.

The explanation given in its answer, and supported, as we think, by the proof, is that in those years the canal so suffered from hostile competition, compelling great reductions in tolls, from the general depression of the business of the country, from the great flood in 1877, and from interruptions caused by strikes of the boatmen, that it was not possible to make the canal yield the revenue of the preceding years. Obliged, as it was, to contend with these obstacles to profitable business, some of which, it is a matter of general notoriety, did interfere with the prosperity of all the great works of the country, the complainant has failed to satisfy us that any better results were possible, or that the deficiency of revenue is necessarily to be attributed to the extravagance or mismanagement of the officers of the corporation. Nor would it seem to so appear to the trustees of the mortgage which secures these bonds, nor to the great majority of the bondholders themselves; for, although the bill has been a year on the files of the court, only one bondholder besides the complainant, and he holding but a small amount of bonds, has united in the suit. It is but a very small minority of bondholders who are asking for the relief prayed for in the bill, and it does not appear that any others believe that the remedy now sought would be beneficial to their interests; and the trustees of the mortgage, who are in no way connected with or committed to the present management, and who are as individuals owners of considerable amounts of the bonds, are here in court strenuously opposing the present application. This attitude of these trustees having a large pecuniary interest, having also an important duty and obligation as trustees, and who are familiar with the affairs of the canal, and this apparent indifference to this application on the part of a great majority of the bondholders, is, we think, to be considered by the court in determining whether, under all the facts of the case, results more beneficial to the bondholders might reasonably be expected from the management

of a receiver.   It is also to be considered that if a receiver were appointed it would not be for any merely temporary purpose, to keep the canal going pending litigation, and looking to a sale or other termination of his duties, but it would be to operate the canal until from the net income these bonds, with 15 years of accumulated interest, should be paid off. For some 40 years of its existence the canal earned nothing beyond its current expenses, and it was not until after 1868 that it made any payment of interest on these bonds.   Many of the difficulties and disasters which in former years have stood in the way of the pecuniary success of the canal may at any time again occur; so that it is manifest that the court, by its receiver, if it took possession of the canal, might have to manage this artificial water highway, in need of constant repairs, subject to freshets, strikes, and the difficulties of competition, through a period of time which this century might not see the end of.   To lead the court to pass such a decree the case should be free of every question as to the mismanagement of the corporation, and as to the absolute right of the complainant to have such relief, and there should be no doubt that the appointment of a receiver would be an effectual relief.

The complainant has shown, and has pressed upon the attention of the court, several considerable expenditures of the tolls and income, which, it is alleged, are in violation of the terms of the mortgage, and are wilful misappropriations of money which should have been applied to the payment of interest on the bonds.   These are the expenditures for (1) the outlet locks above Georgetown; (2) the leasing and purchasing of wharves at Cumberland; (3) the telephone; (4) and the payments of directors and their hotel bills.

With regard to the outlet locks above Georgetown, and the wharf property at Cumberland, the respondent corporation has produced a great deal of testimony to show that the acquisition of these terminal conveniences was absolutely necessary to enable the canal to maintain itself against competition which threatened its existence, and that the possession of them has put the canal in a position of independence

from adverse control, and of ability to economically manage its business and earn revenue, such as it has not heretofore enjoyed, and from which the bondholders will reap immediate benefit.   Without now considering these questions in all their bearings, it is sufficient for the purposes of this motion to consider the standing of the complainant with regard to these expenditures.   These acquisitions have not been undertaken secretly.   They have been considered and discussed in the published reports made by the president and directors to the stockholders for some 10 years past, and committees have been appointed who have reported on them.   It may be fairly said that the complainant, through his representatives and agents, at stockholders' meetings and otherwise, has had full notice of the intention of the corporation to acquire these terminal facilities, and of the reasons for so doing.   He never raised his voice in protest before these acquisitions were consummated, and it does not seem to us that he can now be heard to say, with any force, that they were such a wrong upon his rights under the mortgage, and evince such a reckless disregard of them, that the court should, in consequence, oust the corporation from possession and management.

The construction of the telephone along the line of the canal, the cost of which, it is charged, was an unlawful diversion of revenue which should have been paid to the bondholders, was, it appears to us from the testimony, a reasonable expenditure for a very great convenience, tending directly to preserve the existence of the canal by affording means of giving immediate notice of breaks and leaks, which, if not quickly repaired, result in great damage and interruption of business.   The proof fully explains the dangerous delays and difficulties attending the former practice of sending notice of leaks by messengers to the nearest superintendent, and the saving which is accomplished by the speedier method; and the proof also shows that with the use of the telephone a less number of superintendents is required, which results in a considerable saving of annual expense.

We come now to consider a misappropriation of income which the proof does fully sustain, and that is the payment

from the earnings of the canal of extravagant hotel bills, incurred by the president and directors, and charged by them to the corporation, without warrant or authority. These bills, so far as ascertained and proved, amount, for the six years from 1874 to 1878, to over $12,000. The items show that the charges are for personal expenses and extravagant entertainments of these officers, and indicate certainly a disposition on their part to use their official position for their personal gratification, in disregard of the creditors they were appointed to protect—conduct in the managers of an insolvent corporation well calculated to excite suspicion and distrust with regard to the fidelity of their general management of its concerns. The excuse offered—that it had been for years the custom of the directors to extend such "hospitalities" at the expense of the canal—is, of course, no defence of so unwarrantable an expenditure of creditors' money, and is some proof of the averment made by the complainant that years of abuse have sanctioned methods of conducting the affairs of the canal which waste its revenue and deprive them of money which should be paid to them. But while it is true that these proven bills do tend to excite distrust, they do not actually prove anything but themselves, and are not in themselves sufficient to justify the costly machinery of a receivership.

The complainant further charges that the conduct of the president and directors in obtaining the passage by the legislature of Maryland of the act of 1878, authorizing the corporation to issue $500,000 of repair bonds, was without actual necessity, and, as it endangered the security of the complainant, was a serious breach of trust committed by the corporation. The passage of this act was procured by representing to the legislature the dismantled condition of the canal, caused by the extraordinary flood of 1877, and the impossibility of raising money on the repair bonds authorized by the act of 1844. Attorneys who were the representatives and agents of the complainant, acting in his behalf before the same legislature, and in respect to the bonds he now sues upon, were also at that time attorneys of the corporation employed

to assist in procuring the passage of the act of 1878.   That any deceit was practiced upon them by officers of the corporation, as to the real condition of the canal or its finances, we have no reason to believe; and if, with knowledge of all they now know, the agents of the complainant were satisfied themselves and endeavored to convince others that the act of 1878, and the issuing of the bonds authorized by it, was a wise, necessary, and beneficial measure, surely the complainant's present claim to be protected from the corporation because of its acceptance of that act is not an argument which adds any strength to his case.

Without a more particular statement of the reasons which have brought us to the conclusion, it suffices to say that, after a full consideration of the able presentation of the whole case, we find most of the material averments of the bill unsupported by the testimony, and those which are proved are not, in our judgment, such as to justify the exercise of that judicial power which would put into the hands of an officer of the court for an indefinite time the management of a *quasi* public work, attended with unusual risks and uncertainties.

We do, however, find that the complainant, and those who hold bonds similar to his, are in a position of great difficulty. They have a first lien on the revenues of a canal, which, it would appear, in years of reasonable business prosperity, when it has a fair share of business, and meets with no extraordinary interruptions from freshets or strikes, can earn sufficient revenue to pay them the interest on their bonds. This margin of surplus revenue over the working expenses, on which the ability to make these payments of interest depends, is so small that it is easily absorbed, unless there is exercised the most careful management and economy.

In this management these bondholders have no voice whatever. The state, as the owner of a majority of the utterly valueless stock, appoints the managers, and unless the bondholders can sustain the burden of the proof of showing that they are not paid because of mismanagement, they have no remedy under their mortgage.   It seems to us that under these circumstances the bondholders should be afforded some

convenient method of scrutinizing these expenditures, which so vitally affect them and them alone, and we think that, without appointing a receiver, it would be within the power of this court to retain the bill for the purpose of having the corporation, at stated intervals, render an account of its receipts and disbursements for the information and protection of the bondholders. The motion for a receiver is denied.

BOND, C. J., concurred.

Subsequently counsel were heard on the question of costs, and on the form of the decree, and the court said:

"We incline to the opinion that the bill in this cause was filed in good faith for the benefit of the whole body of bondholders, and has resulted in a decree which will be for their benefit, and that the costs, the bill having been filed for the benefit of all, should be borne equally by them all. We do not think it equitable, though it is shown in the cause that some of the bondholders refused to unite in the suit, that they should be allowed to reap the benefit of complainant's action and bear no proportion of its costs; and we think complainant's costs should be refunded to him out of the first funds which, in the hands of the canal company, would be applicable to payment of interest on the bonds. It appeared to the court that the corporation held the position of a trustee, and therefore the court retained the bill to afford such relief as is usual for courts of equity to give in matters of trust. It implies no imputation of fraudulent conduct on the part of a trustee to require him to make frequent reports of his acts to the court. We think the defendant company should be required to make its reports quarterly. This will secure to the bondholders every opportunity of inspection, and of scrutinizing the conduct of the canal management. If either party think it necessary hereafter to invoke the assistance of the court, in any future matter coming within the scope of this bill, he can come into court and do so by petition in the cause. We will sign the decree drawn by the counsel for the canal company, modified as we have indicated."

### ORDER OF THE COURT.

The following order was then passed and signed by the court:

"Ordered, this January 7, 1881, that the prayer of the complainant's bill for an injunction and the appointment of a receiver is hereby refused. But it appearing to the court to be equitable that the bondholders should be afforded some convenient method of scrutinizing the receipts and expenditures of the canal company, and that this court should accordingly retain this bill for the purpose of having the corporation at stated intervals render an account of its receipts and disbursements for the information and protection of said bondholders, therefore, it is further ordered and decreed that for the purpose aforesaid the bill of complaint be retained by the court, and the canal company be and it is hereby required to file with the clerk of this court quarterly reports, under oath, of its receipts and disbursements, with an itemized account of such receipts and disbursements, and with the names of its officers and employes, and the salary paid to each; and that at any time, upon the application of the complainant in writing, the defendant shall exhibit for inspection, in the clerk's office of this court, any original vouchers or other papers that may be referred to in any of said reports. And be it further ordained and decreed that the complainant or his solicitors shall at all times have free access to the books and papers of the said Chesapeake & Ohio Canal Company for inspection and examination in the office of said company.

"And it is further ordered that the quarterly reports aforementioned shall be made by the said canal company within thirty days after the expiration of each quarter, commencing from the first day of January, 1881, for the first quarter.

"It is further ordered that the costs of this case—to be taxed by the clerk—shall be paid by the said Chesapeake & Ohio Canal Company out of the first moneys which shall be in its hands otherwise applicable to the payment of the coupons upon the preferred bonds in controversy; and the clerk is hereby directed to tax, as part of the costs, the expense of printing the various pleadings, exhibits, and briefs of the respective parties."